UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY A. HANNAFORD,
    Petitioner,

                                    Civil Action No. 05-70392
v.                                    Honorable Patrick J. Duggan

JOAN YUKINS,
    Respondent.
_____/

**<u>OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 6, 2007.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner Terry A. Hannaford ("Petitioner") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's application follows her convictions and sentence in the Circuit Court for the County of Wayne, State of Michigan, for the following offenses: operating a vehicle under the influence of intoxicating liquor ("OUIL") causing death, in violation of MICH. COMP. LAWS ANN. § 257.625(4); operating a vehicle with a suspended license causing death, in violation of MICH. COMP. LAWS ANN. § 257.904(4); and failing to stop at the scene of a personal injury accident, in violation of MICH. COMP. LAWS ANN. § 257.617a. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I.    Background**

1

Petitioner waived her right to a jury trial and was tried before the Honorable Michael M. Hathaway in the Wayne County Circuit Court on December 21, 2001 and January 4, 2002.  The charges against Petitioner arose from a motor vehicle accident at around 4:00 p.m. on January 25, 2001, on Mt. Elliott in Detroit, Michigan.  The evidence introduced at trial revealed that Petitioner's vehicle struck a vehicle driven by Suzie Coleman.  Ms. Coleman's eleven year old niece was a front seat passenger in her car and her four year old grandson was asleep in the back seat.  Ms. Coleman and her niece suffered injuries as a result of the accident; her grandson was killed.

At trial, Latrina McCurrie testified that in the afternoon of January 25, 2001, she was a passenger in a vehicle at the intersection of Lynch Road and Mt. Elliott in Detroit, Michigan, when she saw a black car being driven at approximately 80 miles per hour on Mt. Elliott.  Ms. McCurrie testified that the car sped through a red light at the intersection of Mt. Elliott and Lynch Road and then crossed the center line, crashing into an oncoming car.  Ms. McCurrie saw someone– who later turned out to be Ms. Coleman– dispelled from the second vehicle.

Ms. McCurrie exited her vehicle and went to provide assistance.  According to Ms. McCurrie, the driver of the black car exited the vehicle, approached the crowd around the accident scene, and asked whether everyone was okay.  Ms. McCurrie testified that approximately five minutes later, she saw the driver of the black vehicle walking down the road and away from the accident scene.  Ms. McCurrie identified Petitioner as the driver of the black car.

Estella Rice next testified at Petitioner's trial. In January 2001, Ms. Rice lived on Mt. Elliott, a short walk from the accident scene, and she had known Petitioner for approximately thirteen years. After hearing commotion on Mt. Elliott at the time of the accident, Ms. Rice was preparing to go outside and investigate when Petitioner appeared at her door. According to Ms. Rice, Petitioner was visibly upset and told her that she had been involved in a car accident. Ms. Rice testified that she smelled beer on Petitioner. After using the restroom, Petitioner left Ms. Rice's house.

The police subsequently questioned Ms. Rice and told her to call them if Petitioner returned. Ms. Rice testified that Petitioner in fact returned to her house at about 7:00 p.m. that evening. Ms. Rice, who was in the bathtub at the time, immediately called the police. Before Ms. Rice saw Petitioner, the police arrested Petitioner next door, where Ms. Rice's sister lived.

Sergeant Charles Rogers transported Petitioner to the police station following her arrest. Petitioner rode in the rear seat of Sergeant Rogers' patrol vehicle. She was separated from Sergeant Rogers, who was driving the vehicle and was the only officer in the car, by a fiberglass panel in which there only was a 6" x 6" hole. Despite this barrier, Sergeant Rogers testified that he could smell a strong odor of alcohol on Petitioner and that her speech was slurred.

The prosecution submitted Petitioner's certified driving record into evidence. This record indicated that Petitioner's license had been suspended on June 5, 2000.

Petitioner testified in her defense, stating that, "by [her] knowledge," her driver's

3

license had not been suspended. On cross-examination, Petitioner denied consuming any alcohol prior to the accident or from the time of the accident until the time of her arrest some two and a half hours later. Petitioner further testified that she hit Ms. Coleman's vehicle after Ms. Coleman ran a stop sign and stopped her vehicle in the path of Petitioner's on-coming vehicle. According to Petitioner, after going to Ms. Rice's house to call for help, she walked around in an alley until she heard the ambulance leave the scene of the accident. She then went to turn herself in to the police.

Following closing arguments on January 4, 2002, Judge Hathaway found Petitioner guilty of OUIL causing death, operating a vehicle with a suspended license causing death, and failing to stop at the scene of a personal injury accident. On February 15, 2002, Judge Hathaway sentenced Petitioner to concurrent terms of imprisonment of ten to fifteen years on the first two convictions and 240 days imprisonment on the last conviction. On September 16, 2003, the Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Hannaford,* No. 240817 (Mich. Ct. App. Sept. 16, 2003) (unpublished op.) The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Hannaford*, 469 Mich. 1015, 677 N.W.2d 25 (2004).

On February 2, 2005, Petitioner filed the instant petition, in which she seeks habeas relief on the following grounds:

>   I.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING PETITIONER'S MOTION FOR DIRECTED VERDICT AFTER THE PROSECUTION RESTED.

  II.  THE EVIDENCE WAS INSUFFICIENT TO SUPPORT PETITIONER'S CONVICTIONS FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANTS CAUSING DEATH AND OPERATING A MOTOR VEHICLE WITH SUSPENDED LICENSE CAUSING DEATH.

  III.  PETITIONER'S MULTIPLE CONVICTIONS FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANTS CAUSING DEATH AND OPERATING A MOTOR VEHICLE WITH SUSPENDED LICENSE CAUSING DEATH, AS A RESULT OF THE SAME INCIDENT, CONSTITUTE DOUBLE JEOPARDY.

  IV.  THE TRIAL COURT ABUSE[D] ITS DISCRETION IN SENTENCING PETITIONER TO A TERM OF IMPRISONMENT SUBSTANTIALLY LONGER THAN THE HIGHEST END OF THE SENTENCING GUIDELINES.

  On August 2, 2005, Respondent filed a motion to dismiss the habeas petition, arguing that the claims contained in the petition had not been presented to the state courts as issues of federal constitutional law. This Court denied Respondent's motion in an opinion and order issued on February 7, 2005; however, the Court found in its opinion and order that Petitioner's fourth claim lacked merit. The Court therefore dismissed that claim and ordered Respondent to answer the merits of Petitioner's first, second and third habeas claims. On March 10, 2006, Respondent filed its answer.

**II. Standard of Review**

  The Antiterrorism and Effective Death Penalty Act ("AEDPA") instructs federal courts to apply the following standard of review when reviewing applications for a writ of

habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Section 2254 further provides that a habeas court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) (holding that "We give complete deference to state court findings unless they are clearly erroneous").  A request for habeas relief only should be granted if a constitutional error had a "substantial and injurious effect or influence" on the state court proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721 (1993); *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003).

The United States Supreme Court has explained the proper application of the "contrary to" clause in Section 2254(d)(1) as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

6

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000).  With respect to the "unreasonable application" clause in the same subsection, the United States Supreme Court has instructed that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 410-11, 120 S. Ct. at 1521-22.  The term "clearly established federal law" in Section 2254(d)(1) refers to "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S. Ct. at 1523.

**III.   Analysis**

7

> **A.     Whether the Trial Court Committed Reversible Error in Denying Petitioner's Motion for a Directed Verdict and Whether the Evidence Was Sufficient to Support Petitioner's Convictions for OUIL Causing Death and Operating a Motor Vehicle With a Suspended License Causing Death**

In her first claim, Petitioner contends that the trial court erred in denying her motion for directed verdict with respect to the charges of OUIL causing death and operating a vehicle with a suspended license causing death. In her second claim, Petitioner contends that there was insufficient evidence to convict her of these charges.

A habeas court reviews a claim alleging that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000). This standard applies to bench trials, as well as to jury trials. *United States v. Malcuit*, 104 F.3d 880, 884 (6th Cir. 1997). In reviewing a sufficiency of the evidence claim, a federal court does not make its own subjective determination of guilt or innocence; it is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02, 113 S. Ct. 853, 860-61 (1993); *McKenzie*, 326 F.3d at 727. Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court– including a determination by a state appellate court on its review of the state trial record– shall be presumed correct and the Petitioner has the burden of rebutting the

presumption by clear and convincing evidence. *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985). If there was sufficient evidence to support the verdict, there can be no error in the trial court's denial of a motion for directed verdict. *See Shacks v. Tessmer*, 8 Fed. App'x 344, 351-52 (6th Cir. 2001).

Petitioner challenges her conviction for OUIL causing death, contending that there was insufficient evidence to establish that she was under the influence of liquor or intoxicated at the time of the accident on January 25, 2001. The Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> Although no breathalyzer or field sobriety tests were ever administered to defendant, it can reasonably be inferred that defendant was driving while intoxicated in light of the evidence regarding defendant's erratic driving at a very high speed immediately before the accident, a witness' unequivocal testimony that she smelled a noticeable beer odor on defendant when she arrived at the witness' house minutes after the accident, and the police officer's testimony that when he arrested defendant two hours later, she had slurred speech and a very strong odor of intoxicants.

*Hannaford*, No. 240817, at * 3. The Michigan Court of Appeals concluded that this evidence, when viewed in a light most favorable to the prosecution, was sufficient to sustain defendant's conviction for OUIL causing death. *Id*. This Court agrees and further finds that sufficient evidence to sustain this conviction had been presented at the time Judge Hathaway denied Petitioner's motion for directed verdict. Further supporting the Michigan court's decision is the fact, as the trial court noted in its ruling, that Petitioner denied drinking any intoxicants either before *or after* the accident. This negates any

possibility that Petitioner's slurred speech or the strong odor of alcohol Sergeant Rogers smelled when he transported Petitioner to the police station were due to something Petitioner consumed after the accident.

Petitioner also argues that there was insufficient evidence to establish that her license was suspended at the time of the collision. The Michigan Court of Appeals rejected Petitioner's claim, finding that a review of the record indicated that a certified copy of Petitioner's driving record was admitted at trial and that this record reflected that Petitioner's license was indefinitely suspended at the time of the collision. *Hannaford*, No. 240817. at * 3. This evidence, despite Petitioner's testimony that to *her* knowledge her license was not suspended, was sufficient to lead the trier of fact to conclude that Petitioner's license in fact was suspended at the time of the fatal accident.[1] As Petitioner's driving record was introduced before the prosecution rested, the Court also finds that Judge Hathaway did not err in denying Petitioner's motion for directed verdict with respect to this charge.

---

[1] To prove the crime of operating a vehicle with a suspended license causing death, the prosecution also must prove *inter alia* that the defendant knew that his or her license was suspended. *See People v. McMaster*, 154 Mich. App. 564, 572, 398 N.W.2d 469, 472 (1986). Despite Petitioner's claim that "to [her] knowledge" her license was not suspended as of January 25, 2001, the trial court found Petitioner's claim incredible, remarking: ". . . for anyone to amass a driving record like this which is incidentally I think the worst driving record I have ever seen in my life, to suggest that she didn't have notice of her suspension is an argument that does not pass the giggle test." 1/4/02 Trial Tr. at 89. Such credibility determinations of the trier of fact are presumed correct. *See* 2254(e)(1). In any event, Petitioner does not claim in her habeas petition– and it does not appear that she claimed on appeal– that there was insufficient evidence to support the trial court's finding that she knew that her license was suspended.

For the reasons set forth above, the Court concludes that Petitioner has no right to habeas relief on the basis of her first and second claims.

### B. Whether Petitioner's Convictions for OUIL Causing Death and Operating a Vehicle With A Suspended License Causing Death Violates Double Jeopardy

Petitioner next claims that her convictions for OUIL causing death and operating a motor vehicle with a suspended license causing death violate the Double Jeopardy Clause of the United States Constitution.  Before the Michigan Court of Appeals and Michigan Supreme Court, Petitioner only argued that these convictions violated the State Constitution's Double Jeopardy Clause.  The Michigan Court of Appeals rejected Petitioner's claim, concluding that each statute targets different societal harms and that each offense requires proof of an element which the other offense does not.  *Hannaford*, No. 240817, at * 4.  The Michigan court's decision was neither contrary to nor an unreasonable application of clearly established Federal law.

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The Supreme Court has held that this clause "protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28, 118 S.Ct. 2246, 2250 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969)).  The prohibition is applicable to the States through the Fourteenth Amendment. *Id.* at 727, 89 S. Ct. at 2250.

11

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932). *Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 2225 (1977). As the *Brown* Court explained that test:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . ." This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . .

*Id*. at 166, 97 S. Ct. at 2225-26 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17 (1975)). The Michigan Court of Appeals found no double jeopardy violation because the offense of OUIL causing death requires a finding that the defendant was operating a motor vehicle while under the influence of liquor; in comparison, the offense of operating a vehicle with a suspended license causing death requires a finding that the defendant's license was suspended. As this decision is neither contrary to nor an unreasonable application of the *Blockburger* test, Petitioner is not entitled to habeas relief on her third claim.

**IV.   Conclusion**

For the reasons stated above, the Court concludes that the Michigan Court of Appeals' adjudication of Petitioner's claims was neither contrary to nor an unreasonable

application of clearly established Federal law as determined by the Supreme Court of the United States. The State court's decision also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the trial before Judge Hathaway. This Court therefore concludes that Petitioner is not entitled to habeas relief based on the claims raised in her petition.

Accordingly,

**IT IS ORDERED**, that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED WITH PREJUDICE**.

                                            s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
Sanford A. Schulman, Esq.
Raina Korbakis, Esq.